IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JAMES R. ASBURY,

        Plaintiff,

v.                    //   CIVIL ACTION NO. 1:16CV132
                                (Judge Keeley)

RITCHIE COUNTY COMMISSION,
a political subdivision of
the State of West Virginia;
BRYAN BACKUS, individually;
RON BARNIAK, individually,

        Defendants.

**MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION
FOR PARTIAL SUMMARY JUDGMENT [DKT. NO. 25] AND GRANTING
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [DKT. NO. 27]**

This is § 1983 action that was removed from the Circuit Court
of Ritchie County (Dkt. No. 1). Now pending are the parties' cross
motions for summary judgment. For the reasons that follow, the
Court **DENIES** the plaintiff's motion (Dkt. No. 25), and **GRANTS** the
defendants' motion (Dkt. No. 27).

## I. BACKGROUND

The plaintiff, James R. Asbury ("Asbury"), was employed as a
deputy sheriff with the Ritchie County Sheriff's Department("RCSD")
from May 2011 until May 2015, when he was placed on paid
administrative leave. Asbury was terminated from the RCSD effective
December 31, 2015. At all time relevant, defendant Bryan Backus
("Backus") was the Sheriff of Ritchie County, and defendant Ronald
Barniak ("Barniak"), the former Sheriff of Ritchie County, was

serving as the Chief Administrator of the RCSD.

As a deputy, Asbury was assigned to use a Dodge Durango as his police cruiser. Vehicles used by RCSD deputies are owned by the Ritchie County Commission (the "Commission") and issued to the deputies for use during their employment. According to RCSD policy, deputies are not permitted to use their assigned vehicles for personal or other non-governmental business.

During the course of Asbury's employment as a deputy, Backus and Barniak noticed that Asbury's reported monthly "activity levels," such as criminal investigations, citations, and service of process, were substantially lower than his fellow deputies' reported levels. In an attempt to ascertain why Asbury's activity levels were below those of his fellow deputies, Backus and Barniak decided to install a GPS unit on Asbury's Durango in order to monitor its whereabouts while Asbury was on duty.

The GPS unit tracked Asbury's cruiser any time it was in use and thus provided data to the RCSD regarding the vehicle's location, the times it was being used, and its speed. Neither Backus nor Barniak informed Asbury of the GPS installation. The GPS monitoring took place from approximately October, 2013, through May, 2014.

On or about May 22, 2014, Asbury became aware of the GPS device after he was charged in a criminal complaint with the felony offense of falsifying accounts, based on what the defendants

2

alleged were discrepancies in the duty logs submitted by Asbury and the data recorded by the GPS unit in his cruiser. Backus testified to a grand jury on January 26, 2015, following which the grand jury indicted Asbury of eight felony counts of falsifying accounts in violation of W. Va. Code § 61-3-22, and one misdemeanor count of embezzlement in violation of W. Va. Code § 61-3-20.

During the course of the state criminal proceedings, Asbury moved to suppress the GPS data. Relying primarily on <u>United States v. Jones</u>, 565 U.S. 400 (2012), the Circuit Court of Ritchie County suppressed the data gathered by the GPS device, ruling that its installation in Asbury's vehicle required a warrant (Dkt. No. 27-7). Following the suppression of the GPS data, the state moved to dismiss the charges against Asbury.

On May 23, 2016, Asbury initiated this civil action against the defendants by filing a complaint in the Circuit Court of Ritchie County (Dkt. No. 1-2). The first count raises a state law negligence claim against the Commission. The remaining four counts assert a number of federal constitutional claims under 42 U.S.C. § 1983, consisting of an illegal search under the Fourth Amendment related to the warrantless installation and monitoring of the GPS unit in Asbury's vehicle,[1] as well as separate but related

---

[1]

Although not raised by the parties, the Court finds that the doctrine of collateral estoppel does not apply to Asbury's Fourth Amendment claim. Where charges against a criminal defendant have been abandoned following a suppression ruling adverse to the state

constitutional violations, namely that the Commission had customs
or policies that authorized the violation of RCSD employees' Fourth
Amendment rights. On June 22, 2016, the defendants removed the case
to this Court.

Pursuant to 28 U.S.C. § 1331, the Court has jurisdiction over
Asbury's federal claims inasmuch as Section 1983 is a federal
statute through which deprivation of constitutional rights may be
redressed. A district court properly invested with jurisdiction can
also exercise supplemental jurisdiction over state law claims that
"form part of the same case or controversy." 28 U.S.C. § 1367, <u>see
also</u> <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715 (1966).
Accordingly, the Court has jurisdiction over all of Asbury's
claims.

Now pending are the parties' cross motions for summary
judgment. Asbury has moved for summary judgment on his Fourth
Amendment claim. The defendants have moved for summary judgment on
all counts. The motions are fully briefed and ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings,

---

in a prior criminal prosecution, the suppression ruling has no
preclusive effect in subsequent Section 1983 litigation. <u>See, e.g.</u>,
<u>Bilida v. McCleod</u>, 211 F.3d 166, 171 (1st Cir. 2000)(no preclusion
where suppression ruling led simply to an abandonment of the
prosecution); <u>Patzner v. Burkett</u>, 779 F.2d 1363 (8th Cir.
1985)(upholding Section 1983 verdict for defendant officers where
criminal charges were dismissed based on state court ruling that
arrest was unconstitutional).

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a motion for summary judgment, the Court reviews all the evidence "in the light most favorable" to the nonmoving party. Providence Square Assocs., L.L.C. v. G.D.F., Inc., 211 F.3d 846, 850 (4th Cir. 2000). The Court must avoid weighing the evidence or determining its truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has made the necessary showing, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256 (internal quotation marks and citation omitted). The "mere existence of a scintilla of evidence" favoring the non-moving party will not prevent the entry of summary judgment; the evidence must be such that a rational trier of fact could reasonably find for the nonmoving party. Id. at 248–52.

## III. APPLICABLE LAW

### A. 42 U.S.C. § 1983 Claims

Several of Asbury's claims stem from alleged violations of 42 U.S.C. § 1983, which provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

To succeed on a § 1983 claim, a plaintiff must show that (1) he was deprived of a right "secured by the Constitution and the laws" of the United States, and (2) the individual who deprived him of the right was acting under color of state law. Lugar v. Edmonson Oil Co., 457 U.S. 922, 930 (1982) (internal citations omitted). Generally, a public employee acts under color of law "while acting in his official capacity or while exercising his responsibilities pursuant to state law." Conner v. Donnelly, 42 F.3d 220, 223 (4th Cir. 1994) (quoting West v. Atkins, 487 U.S. 42, 50 (1988)).

Section 1983 "'is not itself a source of substantive rights,'

6

but merely provides 'a method for vindicating federal rights elsewhere conferred.'" <u>Graham v. Connor</u>, 490 U.S. 386, at 393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n. 3 (1979)). In order to determine what standard applies, courts must first isolate "the specific constitutional right allegedly infringed." <u>Baker</u>, 443 U.S. at 140.

## B. Fourth Amendment

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. amend. IV. It is from the clear language of the Fourth Amendment that courts derive the standard applicable to alleged violations of it. <u>See</u> <u>Graham</u>, 490 U.S. at 394-95.

## V. DISCUSSION

Asbury seeks summary judgment on Count II of the complaint (Dkt. No. 25). The defendants seek summary judgment on all counts (Dkt. No. 27). Each of Asbury's claims relate directly or indirectly to the individual defendants' installation and monitoring of the GPS unit in his vehicle.

## A. Count I - Negligence

In Count One of the complaint, Asbury asserts a negligence claim against the defendants (Dkt. No. 1-2 at ¶¶ 27-30). During discovery, Asbury clarified that this claim is solely against the Commission (Dkt. No. 27-6 at 8-9).

Asbury alleges that the Commission negligently violated his Fourth Amendment rights to be free from unreasonable search and seizure by placing a GPS unit on his vehicle and monitoring him for a period of five months, without a warrant. The Commission argues that it is statutorily immune from liability on this claim.

The West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, et seq.(the "Act") provides, in pertinent part, that

> [e]xcept as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly cause by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

W. Va. Code § 29-12A-4(b)(1). Thus, pursuant to West Virginia law, political subdivisions are immune from suit for common law negligence unless the claim falls within an exception provided in subsection (c) of the Act. Those exceptions include: (1) the negligent operation of any vehicle by employees within the scope of their employment, (2) the negligent performance of acts by their employees while acting within the scope of employment, (3) the negligent maintenance of roads and sidewalks, (4) negligent act by employees on subdivision property, and (5) any other liability established by other sections of the code. Id. at § 29-12A-4(c).

In his response to the defendants' motion, Asbury appears to concede that none of the exceptions delineated in subsection (c)

8

applies to his claim, but nonetheless proceeds to cite part (2) of
that subsection, which provides:

> Political subdivisions are liable for injury, death, or
> loss to persons or property caused by the negligent
> performance of acts by their employees while acting
> within the scope of employment.

W. Va. Code § 29-12A-4(c)(2). He also argues that, even if none of
the exceptions in subsection (c) applies, his claim against the
Commission should be maintained under the Act because the conduct
alleged meets the general foreseeability standard of West Virginia
tort law.

A mere allegation of negligence, however, does not turn an
intentional tort into negligent conduct. Weigle v. Pifer, 139
F.Supp.3d 760, 780 (S.D. W.Va. 2015)(citing Benavidez v. United
States, 177 F.3d 927, 931 (10th Cir. 1999)). Conduct that supports
a negligence claim can be distinguished from conduct that supports
an intentional tort claim by examining the subjective intent of the
alleged tortfeasor. Id. (citing Kawaauhau v. Geiger, 523 U.S. 57,
62 (1998)("Intentional torts, as distinguished from negligent or
reckless torts . . . generally require that the actor intend 'the
consequences of an act,' not simply 'the act itself'.")).

Here, Asbury fails to allege any conduct that supports a claim
of negligence against the Commission. It is apparent that Asbury's
negligence claim stems from Backus and Barniak's installation and
monitoring of a GPS tracking device on his vehicle (Dkt. No. 1-2 at

¶ 27-30). It is also clear from the allegations in the complaint, and from the remainder of the record, that Backus and Barniak intended the consequences of their actions during the time period in which Asbury's vehicle was tracked using a GPS unit. That is, their conduct, including placing a GPS unit on Asbury's cruiser, was intentional and undertaken for the purpose of monitoring the location of Asbury and his vehicle. Thus, while Backus and Barniak's actions may give rise to an intentional tort, they cannot support liability predicated on negligence.

Further, as noted earlier, the negligence claim against the Commission alleged in Count One is, at best, predicated on W. Va. Code § 29-12A-4(c)(2), which extends vicarious liability to political subdivisions for certain negligent acts committed by employees of the subdivision who are acting within the scope of their employment. Because the negligence claim against the Commission is wholly dependent upon the conduct of Backus and Barniak, Asbury's negligence claim against the Commission cannot proceed.

Accordingly, the Court **GRANTS** the Commission's motion for summary judgment as to the negligence claim against it in Count One.

B.    **Count Two - Unreasonable Search and Seizure**

All parties believe they are entitled to summary judgment on Asbury's claim that Backus and Barniak violated his Fourth

10

Amendment right to be free from unreasonable search and seizure by placing a GPS unit on his county-issued police vehicle and monitoring the physical location and speed of that vehicle without a warrant.

Asbury argues that the defendants' warrantless installation and tracking of a GPS unit on his cruiser constitutes a search implicating his Fourth Amendment rights, and that no exception to the warrant requirement applies. Backus and Barniak argue that Asbury's claim is without merit because the government's placement and monitoring of a GPS unit to determine the location of its own property does not violate the Fourth Amendment.

The Fourth Amendment prohibits "unreasonable searches and seizures" by government agents, including government employers or supervisors. U.S. Const. amend. IV; see O'Connor v. Ortega, 480 U.S. 709, 715 (1987) (plurality opinion). Warrantless searches are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967).

It is undisputed that Backus and Barniak neither sought nor obtained a warrant prior to secretly installing a GPS unit in the police cruiser issued to Asbury. The issue therefore is whether the warrantless installation and monitoring of the GPS unit in Asbury's cruiser constitutes a search implicating his Fourth Amendment rights, and if so, whether that search was nonetheless reasonable

pursuant to the "special government needs" exception to the warrant requirement.

## 1. Physical Trespass on Property

A "search" may occur when the government intrudes upon a person's "reasonable expectation of privacy." Katz, 389 U.S. at 361. Or, a search may occur when the government intrudes or trespasses upon a constitutionally protected area for the purposes of obtaining information. United States v. Jones, 565 U.S. 400, 408 n.5 (2012). In arguing that the installation and monitoring of a GPS unit on his county-issued police cruiser constitutes a search under the Fourth Amendment, Asbury argues that, because the case at hand involves warrantless GPS tracking of a vehicle, the Court's analysis should be governed by U.S. v. Jones.

In Jones, the FBI and local law enforcement secretly installed a GPS tracking device on a private vehicle and monitored the vehicle's movements for 28 days. 565 U.S. at 403. The GPS device established the vehicle's location within 50 to 100 feet and communicated that location to a government computer. Id. The Supreme Court concluded that the government had physically intruded on the defendant's private property to install the GPS device, and that its use of the device for the purpose of monitoring the vehicle's movements constituted a search in violation of the Fourth Amendment.

Relying on Jones, Asbury contends that the installation of a

GPS unit in his county vehicle amounted to an equivalent trespass upon property for the purpose of gathering information, and thus that the defendants' use of that GPS unit to monitor his cruiser's movements constituted a Fourth Amendment search. Despite Asbury's attempt to expand <u>Jones</u> to all cases involving governmental use of a GPS device, the holding in <u>Jones</u> was fact-dependent and narrow. There, the Supreme Court emphasized the significance of the private nature of the property in question, stating:

> It is important to be clear about what occurred <u>in this case</u>: The Government physically occupied <u>private</u> property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a "search" within the meaning of the Fourth Amendment when it was adopted.

<u>Id.</u> at 404-05 (emphasis added). Thus, contrary to Asbury's contention, in <u>Jones</u>, the cause of the constitutional violation was not the method of gathering information by GPS but the physical trespass on a private vehicle.

This case is factually distinguishable from <u>Jones</u>. Here, the government did not attach a GPS unit to, or otherwise physically occupy, Asbury's private property. Rather, the government placed a GPS unit on its <u>own</u> property. It is undisputed that the vehicle in question was owned by the Commission and issued to Asbury solely for use in the performance of his assigned duties and responsibilities as a sheriff's deputy. On these undisputed facts, most notably the public--rather than private--nature of the

property at issue, the Court concludes that <u>Jones</u> is inapposite, and that the installation and monitoring of the GPS unit on Asbury's government-owned and issued cruiser did not constitute a search under <u>Jones</u>.

Having concluded that Asbury's reliance on <u>Jones</u> is misplaced, the Court must now determine whether Asbury had a reasonable expectation of privacy in the location and speed of the vehicle.

**2. Reasonable Expectation of Privacy**

In order to prove a legitimate expectation of privacy, Asbury must establish that his subjective expectation of privacy is one that society is prepared to accept as objectively reasonable. <u>See</u> <u>California v. Greenwood</u>, 486 U.S. 35, 39 (1988). And, "given the great variety of work environments in the public sector, the question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." <u>O'Connor,</u> 480 U.S. at 718.

For example, government employees may have a legitimate expectation of privacy in their offices or in parts of their offices such as their desks or file cabinets. <u>Id.</u> at 716-18; <u>Shields v. Burge</u>, 874 F.2d 1201, 1203-04 (7th Cir. 1989)(concluding that the holding of the <u>O'Connor</u> plurality governs). However, office practices, procedures, or regulations may reduce legitimate privacy expectations. <u>See</u> <u>O'Connor</u>, 480 U.S. at 717 (Blackmun, J., dissenting). Here, the burden is on Asbury to prove that he had a

14

legitimate expectation of privacy in the information collected by the GPS unit. <u>See</u> <u>Rusher</u>, 966 F.2d at 874.

Asbury contends that he had a reasonable expectation of privacy in the physical location and speed of his county-owned police cruiser. That contention, however, is belied by several relevant provisions in RSCD's "Policies and Procedures" manual (the "Policy").

Foremost, the Policy makes clear that the vehicle at issue was assigned to Asbury solely for use in the scope of his employment as a Ritchie County deputy. Policy provisions regarding "Office Property and Equipment" and "Vehicle Usage" provide that deputies are assigned equipment, including motor vehicles, "for use in the performance of [their] assigned duties and responsibilities" (Dkt. No. 27-5 at 8, 9). The "Office Property and Equipment" provision goes on to state that "[a]t no time shall any equipment belonging to this office be used by any deputy sheriff . . . for personal purposes." <u>Id.</u> at 8. Moreover, Paragraph X of the Policy's "General Duty Requirements" makes explicit that the RCSD's general prohibition against personal use of departmental equipment applies with equal force to its vehicles:

> Deputy Sheriff's [sic] shall not use their assigned
> vehicles for personal business or for the transportation
> of unauthorized persons. Any request to use an assigned
> police vehicle for other than official business is to be
> directed to the Sheriff of Ritchie County.

<u>Id.</u> at 13. Also relevant to Asbury's contention that he had a

reasonable expectation of privacy in the location of his cruiser is Paragraph B of the General Duty Requirements, which provides that,

> [w]hile on duty, Deputy Sheriff's [sic] shall maintain proper radio contact and communications with this office and Central Communications, Inc. (911 Center). All deputy sheriffs shall keep dispatch personnel informed of their whereabouts. To this end, deputy sheriff's [sic] shall keep their assigned portable radios charged, turned on, and in their immediate possession.

Id. at 11.

It is undisputed that the device installed in Asbury's cruiser provided data to the RCSD regarding the vehicle's location, time of use, and speed, and that it only recorded data while the vehicle was in use. Per Paragraph B of the Policy's General Duty Requirements, the data recorded by the GPS device is the same information Asbury was already required to provide to dispatch when on duty. And, to the extent that Asbury claims the GPS unit tracked his cruiser's location when he was not on-duty, as already noted, any personal use of the vehicle by Asbury was explicitly prohibited under several Policy provisions.

The Court therefore concludes that, on this record and in light of the Policy provisions cited, Asbury did not possess a legitimate expectation of privacy in the information collected by the GPS device at issue. At bottom, this case involves a government employer monitoring the physical location and speed of a government owned and issued vehicle while in use by a government employee in the scope of his employment. In that light, and for the reasons

16

discussed, the defendants' actions do not constitute a search within the meaning of the Fourth Amendment, whether under the <u>Jones</u> physical trespass analysis or the <u>Katz</u> "reasonable expectation of privacy" formulation. Therefore, Asbury's Fourth Amendment claim fails as a matter of law.

### 3. Reasonableness of Search

Finally, the Court concludes that even if the warrantless installation and monitoring of the GPS unit in Asbury's cruiser had implicated a legitimate expectation of privacy, which it did not, the defendants' conduct was reasonable under the <u>O'Connor</u> exception to the warrant requirement.

A search conducted without a warrant issued by a judge or magistrate upon a showing of probable cause is "per se unreasonable" unless it falls within one of the "specifically established and well-delineated exceptions" to the warrant requirement. <u>Katz v. United States</u>, 389 U.S. 347, 357 (1967); <u>see United States v. Lattimore</u>, 87 F.3d 647, 650 (4th Cir. 1996) (en banc). One exception arises when the requirement is rendered impracticable by "special needs, beyond the normal need for law enforcement." <u>Vernonia School Dist. 47J v. Acton</u>, 515 U.S. 646, 653 (1995).

In determining the appropriate standard for a search conducted by a public employer in areas in which an employee has a reasonable expectation of privacy, what is a reasonable search "depends on the

context within which the search takes place," and requires that the Court balance "the employee's legitimate expectations of privacy against the government's need for supervision, control, and the efficient operation of the workplace." O'Connor, 480 U.S. at 719-720.

In O'Connor, the Supreme Court held that a government employer's interest in "the efficient and proper operation of the workplace" may justify warrantless work-related searches. O'Connor, 480 U.S. at 723; see id. at 720-25. The O'Connor Court further held that when a government employer conducts a search pursuant to an investigation of work-related misconduct the Fourth Amendment will be satisfied if the search is reasonable in its inception and its scope. See id. at 725-26.

A search normally will be reasonable at its inception "when there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct." Id. at 726. "The search will be permissible in its scope when 'the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of ... the nature of the [misconduct].'" Id. (alterations in original)(quoting New Jersey v. T.L.O., 469 U.S. 325, 342 (1985)).

Here, the Court concludes that the defendants' warrantless installation of the GPS unit in Asbury's cruiser and their subsequent monitoring of its location data, was reasonable under

the standard articulated in <u>O'Connor</u>. At the inception of the search, the defendants had "reasonable grounds for suspecting" that the information collected by the GPS device would yield evidence of workplace misconduct because Asbury's reported activity levels in the community, including number of calls taken, citations issued, process served, and hours spent in court, were significantly lower than those of his fellow deputies (Dkt. No. 27-1 at 5-6; Dkt. No. 27-3 at 20, 27; Dkt. No. 27-4 at 2-3).

The search was also reasonable in scope. The measure adopted, installing a GPS unit on Asbury's cruiser, was reasonably related to the objective of the search, determining Asbury's whereabouts in the community while on duty in a county vehicle. Nor was the search excessively intrusive. As previously discussed, it is undisputed that the GPS device installed in Asbury's cruiser recorded information pertaining to the vehicle's physical location, time of use, and speed. The GPS did not collect information regarding the personal items Asbury may have kept in his cruiser, nor did it monitor or record the conversations he may have conducted within it. Rather, the device merely tracked and recorded the location and speed of the vehicle while in use. Notably, this was the same information that Asbury himself was required to report to dispatch while on duty.

Under these circumstances, the Court concludes that the installation and monitoring of a GPS unit in Asbury's cruiser is

conduct in which a reasonable employer might engage. <u>See</u> <u>Vernonia</u> <u>School Dist. 47J</u>, 515 U.S. at 665 (characterizing the relevant question as whether the intrusion by the government employer is one in which a reasonable employer might engage). Therefore, even assuming that Asbury had a legitimate expectation of privacy in the information collected by the GPS unit, which he did not, his Fourth Amendment claim still fails because any such search was reasonable under the <u>O'Connor</u> exception. Accordingly, the Court **GRANTS** the defendants' motion for summary judgment on Count Two and **DENIES** the plaintiff's motion for summary judgment on the same.

## C.  Count Three - Bystander Liability

In Count Three of the complaint, Asbury alleges that other RCSD deputies were aware of the installation and monitoring of the GPS unit in his vehicle and failed to intercede (Dkt. No. 102 at ¶¶ 39-40) In his response to the defendants' motion, however, Asbury abandoned his claim of bystander liability as alleged in the complaint (Dkt. No. 33 at 22). Consequently, the Court **GRANTS** the defendants' motion for summary judgment on Count Three.

## D.  Count Four - Municipal Liability

In Count Four, Asbury alleges that the Commission is liable for the actions of Backus and Barniak because it "instituted an official policy, custom, and practice of violating the Fourth Amendment rights of sheriff's department employees in order to

gather evidence against them to use against them for adverse employment reasons" (Dkt. No. 1-2 at ¶ 42).

It is well established that a municipality cannot be held liable simply for employing a tortfeasor. <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 691 (1978). A municipality may be subject to liability under § 1983 if the alleged injury was caused by an identifiable municipal policy or custom. <u>Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown</u>, 520 U.S. 397, 403 (1997). A government policy or custom need not have received formal approval through the municipality's official decision making channels to subject the municipality to liability. Rather, when an alleged constitutional deprivation is caused by the official actions of those individuals "whose edicts or acts may fairly be said to represent official policy," the government as an entity is responsible under § 1983. <u>Monell</u>, 436 U.S. at 694.

Because § 1983 was not designed to impose municipal liability under the doctrine of respondent superior, the "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479 (1986).

Of course, not every decision by a municipal official will subject a municipality to § 1983 liability. Rather, "[m]unicipal

liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." <u>Pembaur</u>, 475 U.S., at 481. To qualify as a "final policymaking official," a municipal official must have the responsibility and authority to implement final municipal policy with respect to a particular course of action. <u>Id.</u> at 482–83; <u>see also</u> <u>Spell v. McDaniel</u>, 824 F.2d 1380, 1386 (4th Cir. 1987) ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government."). Therefore, to impose municipal liability on the Commission, Asbury must identify municipal officials with "final policymaking authority" to implement the alleged policy of acquiescence with respect to the alleged conduct.

The Fourth Circuit has explained that "to qualify as a 'final policymaking official' a municipal officer must have the responsibility and authority to implement final municipal policy with respect to a particular course of action." <u>Riddick v. School Bd. of Portsmouth</u>, 238 F.3d 518, 523 (4th Cir. 2000). Thus, who possesses final policymaking authority is a question of state law. <u>Pembaur</u>, 475 U.S., at 483. In order to determine which officials possess final policymaking authority for the allegedly unconstitutional action in question, courts look to "the relevant legal materials, including state and local positive law, as well as

'custom or usage having the force of law.'" <u>Jett v. Dallas Indep.</u>
<u>Sch. Dist.</u>, 491 U.S. 701, 737 (1989)(quoting <u>City of St. Louis v.</u>
<u>Praprotnik</u>, 485 U.S. 112, 124 n. 1 (1988)).

Article IX, Section II of the West Virginia Constitution
provides, in pertinent part, that the county commissions "have the
superintendence and administration of the internal police and
fiscal affairs of their counties." Moreover, the Supreme Court of
Appeals of West Virginia has held that "[t]he sheriff, though an
important law enforcement officer, does not have the complete or
the exclusive control of the internal police affairs of the
county." Syl. Pt. 5, <u>State ex rel. Farley v. Spaulding</u>, 507 S.E.2d
376 (W. Va. 1998)(citing <u>Hockman v. Tucker Cnty. Ct.</u>, 75 S.E.2d 82,
85 (W. Va. 1953)). Therefore, under West Virginia law, Sheriff
Backus was not a final policymaker upon which liability may attach.
Rather, the final policy maker is the Commission itself.

Further, even if Backus had final policymaking authority,
"[t]he plaintiff must also demonstrate that, through its *deliberate*
conduct, the municipality itself is the 'moving force' behind the
plaintiff's deprivation of federal rights." <u>Brown</u>, 520 U.S., at 397
(<u>quoting</u> <u>Monell</u>, <u>supra</u>, at 649)(emphasis in original). Accordingly,
to impose § 1983 liability on a municipality, a claimant must first
establish that "a municipal decision reflects deliberate
indifference to the risk that a violation of a particular
constitutional or statutory right will follow the decision." <u>Id.</u> at

23

411. If a § 1983 claimant can demonstrate the requisite degree of culpability, he must then show "a direct causal link between the municipal action and the deprivation of federal rights." Id. at 404.

Here, Asbury argues that Fourth Amendment violations such as the GPS tracking at issue here have been a practice the defendants have utilized to deal with deputies who are deemed to be "problems." The only evidence Asbury cites in support of such an alleged practice is Backus and Barniak's prior GPS tracking of a former deputy and their search of another deputy's department-issued cell phone. Neither allegation, however, provides a sufficient basis for a finding of municipal liability against the Commission.

Asbury's municipal liability claim hinges on Fourth Amendment allegations against Backus and Barniak. Asbury admitted that he has no knowledge or information concerning any policies, practices or customs of the Commission that caused the alleged violation (Dkt. No. 27-2 at 85-86). Further, there is no evidence that the Commission sanctioned or ordered the installation of GPS units on any county-owned vehicles, or the search of any department-owned cell phones. These two incidents, together with the case at hand, do not establish that a "*deliberate* action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights." Id. at 397.

Therefore, for the reasons discussed, the Court finds that neither Backus nor Barniak had final policymaking authority, and that Asbury has failed to demonstrate that any deliberate action by the Commission was the moving force behind the alleged deprivation of his rights. His municipal liability claim against the Commission thus fails as a matter of law, and the Court **GRANTS** the defendants' motion for summary judgment as to Count Four.

**E.    Count Five - Supervisor Liability**

In Count Five of the complaint, Asbury alleges that Backus, as Barniak's supervisor, is liable for the actions of Barniak (Dkt. No. 1-2 at ¶¶ 48-51). In his response to the defendants' motion, however, Asbury abandons this claim of supervisor liability (Dkt. No. 33 at 25). The Court therefore **GRANTS** the defendants' motion for summary judgment as to Count Five.

### V. CONCLUSION

For the reasons discussed, the Court:

- **DENIES** the plaintiff's motion for summary judgment on Count Two;

- **GRANTS** the defendants' motion for summary judgment on Counts One, Two, Three, Four, and Five;

- **DISMISSES** this case with **PREJUDICE**, and **ORDERS** it stricken from the Court's active docket.

It is so **ORDERED**.

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record and to enter a separate judgment order.

DATED: January 16, 2018.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE